UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___1/22/18____

-------------------------------------------------------------X

MANUELE VERDI, individually and in his                    :
official capacity as the Assistant Principal of Public     :
School 24 ("P.S. 24"), a public school under the           :
auspices of the NEW YORK CITY                              :
DEPARTMENT OF EDUCATION,                                   :
                                   Plaintiff,              :
                                                           :
                                                           :
                    -against-                              :
                                                           :
THE CITY OF NEW YORK; THE NEW YORK        :
CITY DEPARTMENT OF EDUCATION;             :
CARMEN FARIÑA, both individually and in her :
official capacity as the Schools Chancellor within :
THE NEW YORK CITY DEPARTMENT OF           :
EDUCATION; MELODIE MASHEL, both           :
individually and within her official capacity as the :
Superintendent of Bronx School District 10, within :
the NEW YORK CITY DEPARTMENT OF           :
EDUCATION; ELIZABETH ROSE, both           :
individually and within her official capacity as the :
Deputy Schools Chancellor within the NEW  :
YORK CITY DEPARTMENT OF EDUCATION;        :
and STEVEN SCHWARTZ, both individually and :
within his official capacity as the Acting Principal :
of Public School 24, within the NEW YORK CITY :
DEPARTMENT OF EDUCATION,                  :
                                                           :
                                   Defendants.             :

-------------------------------------------------------------X

17-CV-1755 (VEC)

OPINION AND ORDER

**VALERIE CAPRONI, United States District Judge:**

Plaintiff, an Assistant Principal at a New York City public school, brings a range of

claims based on alleged retaliation he has endured for his opposition to discriminatory practices

at his school. Defendants, which include the city's Department of Education ("DOE"), two DOE

officials, and two fellow school administrators, move to dismiss the claims. For the reasons

stated below, Defendants' motion is granted in part and denied in part. Plaintiff has sufficiently

alleged state law claims under New York's human rights and civil service laws, has insufficiently alleged a § 1983 claim, and has abandoned his negligence claim. His Title VI claim is inadequately pled, but the Court will grant him leave to amend.

## I.    BACKGROUND

Plaintiff's allegations are laid out in a meandering 65-page complaint that asserts there is race discrimination in the placement of children into P.S. 24 in the Bronx. *See* First Amended Complaint ("FAC") [Dkt. 26].[1] Although some of the allegations have the faint whiff of an Oliver Stone-style conspiracy, Plaintiff, who is an Assistant Principal at P.S. 24, has publicly complained that efforts have been and are being made to keep poor and minority children who live in the appropriate district out of P.S. 24, and his advocacy for those children has resulted in his getting crosswise with the school power structure. *See, e.g.*, FAC ¶¶ 41–57 [18–24]. The primary players in this drama include the now-retired District 10 Superintendent (Defendant Mashel), the local Assemblyman (Jeffrey Dinowitz), the interim and now-permanent Principal of P.S. 24 (Defendant Schwartz), and the head of the school's Parents' Association (Laura Moukas). The Deputy Schools Chancellor (Defendant Rose) has a cameo appearance. Despite the length of the Complaint, when all is said and done, Plaintiff is complaining about three separate incidents of alleged retaliation.

The first incident began with a Parents' Association ("P.A.") meeting on October 21, 2015. During this meeting, Plaintiff and local Assemblyman Jeffrey Dinowitz exchanged angry words over the loss of the lease of the school's annex.[2] The loss of that space was problematic as

---

[1]    Because the paragraph numbering in the FAC is inconsistent and duplicative, the Court's paragraph references will also include the respective page numbers in brackets.

[2]    The argument was not over whether the space in the annex was needed but whether Dinowitz, at a previous meeting, had warned the administration of P.S. 24 that the loss of the annex was imminent. *See* FAC ¶ 28 [14].

it led to overcrowding in the school. Superintendent Mashel was present at the meeting and was aware that Verdi and Dinowitz had argued during the meeting. *See* FAC ¶¶ 27–32 [14–16].

Plaintiff alleges that, on the following day, Mashel called P.S. 24's then-Principal Donna Connelly and directed her to reprimand Plaintiff for his conduct at the meeting. Connelly refused, and Mashel said, "This isn't over." Connelly decided to retire shortly thereafter because, according to Plaintiff, she wished to avoid future confrontations with Mashel and other officials. FAC ¶¶ 33–34 [16]. After Mashel's call to Connelly, Mashel met with Dinowitz and others to discuss how to remove Plaintiff from P.S. 24, *id*. ¶¶ 35–36 [16–17], and, on December 11, 2015, Mashel told the Acting Principal, Andrea Feldman, that she had to find a way to remove Plaintiff if she wanted to remain as Principal. *Id*. ¶ 37 [17].

The second incident involves P.S. 24's kindergarten registration. At a public meeting in January 2016, Dinowitz questioned the process that would be used to confirm addresses of P.S. 24 kindergarten enrollees. As a result of asserted concerns that out-of-district children would attempt to register—Verdi asserts that there was no real concern about out of district children and that the articulated concern was a cover for bias against minority and low-income students—Mashel, Feldman, and Rose agreed to allow Dinowitz's chief of staff Randi Martos to be present during the enrollment process. *See* FAC ¶¶ 41–44 [18–20]. When enrollment actually occurred, Martos and Laura Moukas, president of the P.A., were present to "oversee" kindergarten registration. During the process, they accessed confidential medical and academic records of the prospective enrollees and required parents of minority children to produce three identification documents to register their children, rather than the two that were required of other parents. *See id*. ¶ 52 [22]. Plaintiff wrote to the Schools Chancellor, Defendant Fariña, and DOE's Special Commissioner of Investigation regarding his concerns about the kindergarten enrollment

process. *Id.* ¶¶ 46–47 [20–21], ¶¶ 49–50 [21–22], ¶ 52 [22]. His complaint to the Special Commissioner of Investigation led to an investigation that validated certain of his allegations.[3] *See id.* ¶¶ 82–92 [34–37].

According to the Plaintiff, this second incident led to a meeting between Mashel and Plaintiff. The meeting was initially scheduled for April 6, 2016, but ultimately was held on May 4, 2016. *See* FAC ¶ 77 [24]. Plaintiff alleges that the meeting was called to discipline him for his opposition to the discriminatory enrollment scheme, but the memorandum that documents the meeting makes no mention of Plaintiff's opposition. *See id.* ¶¶ 76 [24], 81–83 [26–28]; Counseling Memorandum, May 23, 2016 [Dkt. 30-4].[4] Instead, the meeting focused on a directive that Mashel had given to Plaintiff to have no contact with Moukas's children, who attend P.S. 24, which the Complaint appears to confirm.[5] FAC ¶¶ 77–79 [24–26]. According to the Plaintiff, during this meeting Mashel ordered him to refrain from entering the P.S. 24 annex (the location in which he had encountered the Moukas children). Plaintiff alleges that this directive prevented him from performing his job. *Id.* ¶ 80 [26]. It is undisputed that Mashel followed up the meeting by placing a memorandum in Plaintiff's file, confirming that he should have no contact with Moukas's children. *Id.* ¶¶ 81–85 [26–28]; Counseling Memorandum.

---

[3]    On August 29, 2016, the DOE issued a report that found Mashel and Feldman had acted improperly in allowing Martos to take part in the school registration process and in enabling Martos and Moukas to access prospective students' confidential materials and to request extra identification. FAC ¶¶ 82–91 [34–37]. According to Plaintiff, this led Mashel to retire and Feldman to be transferred to another school in the district. *Id.* ¶ 92 [37].

[4]    On a motion to dismiss, a court may properly consider documents that a complaint incorporates by reference. *See, e.g., Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 281 n.2 (S.D.N.Y. 2015). The Court finds that the FAC, which discusses the memorandum and alleges its retributive effect, thereby incorporates the memorandum by reference such that the Court may review and consider it at this stage. *See* FAC ¶¶ 81–83 [26–28].

[5]    There is no explanation in the FAC for why the Assistant Principal of a school would be under direction from the District Superintendent to have no contact with three students of the school. It is, at a minimum, odd that the Assistant Principal who complained about substantiated misconduct by the president of the Parents' Association was directed by the Superintendent, who was also involved in the misconduct, to have no contact with three particular students at the school.

The third incident involves Feldman's successor, current-Principal Steven Schwartz (allegedly Mashel's protégé). According to Plaintiff, in early October 2016, Schwartz radically altered Plaintiff's duties and the resources available to him. Plaintiff complains that Schwartz limited Plaintiff's communication with parents, terminated his role as Special Education District Representative, removed his computer access, removed him from the office from which he had previously worked and reassigned him to a book storage room, removed him from the School Leadership Team, and assigned him to monitoring duty of students without adequate assistance. *See* FAC ¶¶ 94–101 [37–40]. Plaintiff alleges that these actions were intended to retaliate against him for his complaints about discrimination and his whistleblowing to DOE. *Id.* ¶ 102 [40–41].

Plaintiff purports to assert eight convoluted and confusing causes of action. The Court finds that there are, in fact, only five causes of action alleged: retaliation claims under Title VI of the Civil Rights Act based on Plaintiff's complaints about discrimination against prospective students; retaliation claims under the New York City Human Rights Law (NYCHRL); a claim under 42 U.S.C. § 1983 for violation of his First Amendment right to voice opposition to discriminatory practices at the school; whistleblower claims pursuant to New York State Civil Service Law § 75-b(1)(a); and claims for negligent training, supervision, and retention of Mashel, Schwartz, and Feldman.[6] *See* FAC ¶¶ 105–190 [42–63].

---

[6] Plaintiff also asserts a claim for punitive damages, FAC ¶¶ 188–90 [63], but punitive damages are a remedy, not a claim. *See, e.g.*, *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 471 (S.D.N.Y. 2013); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 517 F. Supp. 2d 662, 666 (S.D.N.Y. 2007) (citations omitted). And because it is very unclear against which Defendants Plaintiff intends to assert each claim, the Court will generally construe each of the counts as being brought against all Defendants.

## II.    DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

### A.  Plaintiff's Title VI Retaliation Claim is Dismissed Without Prejudice for Failure To Allege Adequately a Connection to Federal Funds

"Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 (2d Cir. 2009) (citing 42 U.S.C. § 2000d; *Alexander v. Sandoval,* 532 U.S. 275, 282–83 (2001); *Tolbert v. Queens Coll.,* 242 F.3d 58, 69 (2d Cir. 2001)). Defendants move to dismiss Plaintiff's Title VI claim on the grounds that individuals cannot be liable under Title VI; that Plaintiff has failed to plead sufficient facts to show that he suffered an adverse employment action that was linked to protected activities; and that Plaintiff has not pled that the primary objective of any federal funds provided to the DOE was to benefit employment, which they argue is required for his Title VI

retaliation claim. *See* MTD at 8–11; Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("MTD Reply") [Dkt. 38] at 2–4.

### 1. Title VI Claims May Not be Brought Against Individuals

Defendants are correct that Title VI does not provide for individual liability. *See, e.g.*, *Milione v. City Univ. of New York*, 950 F. Supp. 2d 704, 708–09 (S.D.N.Y. 2013) (quoting *Kelly v. Rice,* 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005)), *aff'd,* 567 F. App'x 38 (2d Cir. 2014). Accordingly, to the extent that Plaintiff intended to assert Title VI claims against the individual Defendants, those claims are dismissed.

### 2. Plaintiff Has Sufficiently Alleged Adverse Actions and Causation to State a Title VI Retaliation Claim

While the Second Circuit has had minimal occasion to address retaliation claims under Title VI, courts in this District have recognized that such a cause of action exists. A Title VI retaliation claim must "plausibly allege (1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action." *Diaz v. City Univ. of New York*, No. 15CIV1319 PAC MHD, 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016) (quoting *Williams v. CUNY,* No. 13 cv 1055 (CBA), 2014 WL 4207112, at *11 (E.D.N.Y. 2014)) (internal quotation marks omitted). *See also Koumantaros v. City Univ. of New York*, No. 03 CIV10170 GEL, 2007 WL 840115, at *10 (S.D.N.Y. Mar. 19, 2007) (citing *Davis v. Halpern,* 768 F. Supp. 968, 985 (E.D.N.Y. 1991)). "An 'adverse action' in the context of a retaliation claim is an action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Williams*, 2014 WL 4207112, at *11 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–68 (2006)) (internal quotation marks omitted). "Plaintiff may show a causal connection either (1) indirectly, by presenting evidence of temporal

proximity between the protected activity and adverse action, or through other evidence such as different treatment of similarly situated [individuals], or (2) directly*,* through evidence of retaliatory animus directed against . . . plaintiff by the defendant." *Koumantaros*, 2007 WL 840115, at *10 (internal quotation marks and citation omitted).

The Court understands Plaintiff's FAC to allege three incidents of retaliation:[7] Mashel's efforts to discipline and fire him after his argument with Dinowitz at the October 2015 meeting; the May 4, 2016 meeting with Mashel and her placement of a memorandum in his file; and Schwartz's alteration of Plaintiff's duties and resources.[8]

The Court finds that the first incident of retaliation sufficiently states a claim. Plaintiff alleges that Mashel was determined to discipline and dismiss Plaintiff. Causation is sufficiently alleged as Mashel's efforts began immediately after the October 2015 meeting. Although no discipline or dismissal ever occurred, a jury could find that a superintendent's threats to

---

[7]     In addition to the three incidents discussed in text, Plaintiff also summarily alleges that he suffered from other retaliation, such as being deprived of summer employment and promotion to principal. *See, e.g.*, FAC ¶ 139 [49]. The FAC fails to provide any facts to support these additional allegations, so the Court does not consider them in assessing Plaintiff's various claims.

[8]     Defendants do not argue that Plaintiff's FAC insufficiently alleges protected activities or Defendants' knowledge thereof. As courts have borrowed from the Title VII retaliation context to define the analogous claim under Title VI, *see, e.g.*, *Davis*, 768 F. Supp. at 984–85, this Court will do the same relative to the definition of "protected activities." "By analogy to Title VII, to demonstrate participation in a protected activity under Title VI, a plaintiff need only have a good faith, reasonable belief that he was opposing [a] . . . practice made unlawful by Title VI." *Morales v. NYS Dep't of Labor*, 865 F. Supp. 2d 220, 252 (N.D.N.Y. 2012) (internal quotation marks and citations omitted), *aff'd sub nom. Morales v. New York State Dep't of Labor, Div. of Employment Servs.*, 530 F. App'x 13 (2d Cir. 2013).

    Plaintiff has clearly alleged protected activities, in that he alleges that he voiced opposition to actions he thought were discriminatory under Title VI. The Court notes, however, that it is not clear that Plaintiff's argument with Dinowitz in October 2015 was protected activity as opposed to a dispute related to fault-finding over the loss of the lease for the annex. *See* FAC ¶¶ 27–32 [14–16]. Drawing all inferences in Plaintiff's favor, the FAC alleges the dispute to be protected activity. But because that altercation is allegedly the reason Mashel attempted to discipline and dismiss him, Plaintiff will ultimately have to prove that his exchange with Dinowitz at the meeting was, in fact, protected activity.

    In terms of notice to DOE, Plaintiff has alleged that he sent multiple missives to the Schools Chancellor and others complaining about the situation. *See* FAC ¶¶ 46–47 [20–21], ¶¶ 49–50 [21–22], ¶ 52 [22], ¶ 53 [22–23].

discipline and remove an outspoken dissenter would dissuade a reasonable employee from objecting to discrimination.

The second incident fails to state a claim. While the FAC makes it difficult to ascertain the timing of the scheduling of the Mashel meeting relative to the allegedly inciting events, the undisputed subject matter of the meeting and the contents of the memorandum documenting the meeting undercut Plaintiff's assertion that any reasonable person would interpret it as having any connection to his protected activities. According to the FAC, the meeting focused not on the issues Plaintiff opposed but on his purported violation of a directive that he not interact with the Moukas children. Although Plaintiff argues that Moukas's close relationship to and alliance with Mashel allows the Court to infer a nefarious purpose (and, as noted *supra* in note 5, the situation is odd), his assertions read more like a conspiracy theory than a plausible allegation. Although he asserts that during the meeting Mashel forbade him from entering the annex, in effect hindering his ability to do his job, the counseling memorandum that was placed in his file that documented the meeting merely directed him to avoid contact with Moukas's children and said nothing about his authority to enter the annex. *See* Counseling Memorandum. The counseling memorandum also explicitly says that it "is not disciplinary in any manner and cannot be used in any action against an employee except to prove notice if the employee denies notice."[9] *Id.* Counseling memoranda do not constitute adverse employment actions in retaliation claims under Title VII, which, as noted above, are used as precedent when dealing with similar Title VI claims. *See, e.g.*, *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011). As to this particular counseling memorandum, no reasonable worker would be dissuaded

---

[9]     Below this statement, it appears Plaintiff signed the memorandum and wrote, "under protest counseling memos are not filing documents. Rebuttal to follow." *See* Counseling Memorandum. Whatever Plaintiff meant by that, it does not alter the Court's analysis.

from making a charge of discrimination by a counseling meeting and a resulting memorandum that, explicitly on its face, is not disciplinary, cannot be used against the employee beyond proving notice, and appears to be entirely disconnected from Plaintiff's whistleblowing activities. Although Plaintiff contends that this letter has been made part of his personnel file and "constitute[s] retributive action," FAC ¶ 83 [27], the Court finds that the meeting and subsequent memorandum do not support a retaliation claim under Title VI.

In contrast, the Court finds that the third incident does state a claim of retaliation. Plaintiff has alleged that Schwartz radically changed Plaintiff's duties and resources in approximately October 2016. These changes followed the DOE's investigation of the school's kindergarten registration, which Plaintiff's actions initiated, and whose August 29, 2016, report allegedly led to Mashel's retirement and Feldman's transfer. The Court finds that these broad changes to Plaintiff's responsibilities and resources are material to his role and could be viewed as a demotion; a fact finder could easily conclude that demoting an employee who complains about discrimination would dissuade reasonable employees from following suit. Additionally, the Court finds that causation is sufficiently alleged given the relationship alleged between Mashel and Schwartz, and the short time period between the conclusion of the investigation that Plaintiff's reporting spurred and the alterations to his position at P.S. 24.

### 3. Plaintiff Fails to Allege the Requisite Connection to Federal Funds

Section 2000d-3 of Title 42, United States Code, provides: "Nothing contained in [Title VI] shall be construed to authorize action under [Title VI] by any department or agency with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment." In effect, "[f]or a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold

requirement is that the employer be the recipient of federal funds aimed primarily at providing employment." *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (citations omitted). It is unsettled, however, whether retaliation claims *affecting* employment—in which an individual who voices concerns about discrimination against others is retaliated against with respect to his or her employment—should be treated the same as straight retaliation for employment discrimination claims, in which the underlying protected activity is a complaint that the employee was him- or herself discriminated against.

Although the Second Circuit has yet to consider this question, a few district courts have. *Hickey v. Myers,* for example, involved a college dean who had been removed from his position for opposing an allegedly racially-discriminatory admissions policy. No. 09-CV-01307, 2010 WL 786459, at *1–2 (N.D.N.Y. Mar. 2, 2010). The *Hickey* court rejected the defendant's argument that the plaintiff must prove that a primary objective of the school's federal funding was to provide employment: "Plaintiff does not allege employment discrimination but instead alleges that he was retaliated against because he spoke out against racial discrimination in the school's admission policy. This argument does not implicate § 2000d–3." *Id*. at *3 n.1 (N.D.N.Y. Mar. 2, 2010).

This Court agrees with *Hickey* because its approach effectuates the well-established precedent of providing "an implied private right of action to enforce [Title VI's] core prohibition of discrimination in federally-financed programs." *Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003) (citing *Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 610–611 (1983)).[10] At the

---

[10]     The Court acknowledges that other district courts have viewed the issue differently. In *Milione v. City Univ. of New York*, for example, plaintiff was a researcher at a City University of New York ("CUNY")-affiliated institute created to foster higher education among Italian Americans. He alleged Title VI retaliation and discrimination claims asserting that he had effectively been demoted because he is Italian-American and for being critical of CUNY's progress in eliminating discrimination against Italian Americans. 950 F. Supp. 2d at 707–08. The district court summarily concluded that the "primary objective to provide employment" requirement applied to

heart of a Title VI retaliation claim could be the very individuals whom the statutory scheme was

intended to protect, so it is important to distinguish between garden variety retaliation-for-

complaining-about-employment-discrimination claims, on the one hand, and retaliation claims in

which the complainant's employment is affected based on complaints regarding non-

employment discrimination against others, on the other. Section 2000d-3 "ma[d]e it clear that

discrimination in employment which does not affect [the] intended beneficiaries of federal

assistance is not within the reach of title VI," *Carmi v. Metro. St. Louis Sewer Dist.*, 620 F.2d

672, 674 & n.4 (8th Cir. 1980) (citing *United States v. Jefferson County Bd. of Educ.*, 372 F.2d

836, 882–83 (5th Cir. 1966)), *abrogated on other grounds by Consol. Rail Corp. v. Darrone*, 465

U.S. 624 (1984). In contrast, recognizing a retaliation claim based on harms to a claimant's

employment where the complained-of discrimination *was* against the intended beneficiaries of

the relevant federal funding would vindicate rather than undermine the intent and spirit of

§ 2000d-3. Accordingly, this Court finds that the "primary objective of providing employment"

requirement does not apply when analyzing an employment-based retaliation claim where the

victims of the discrimination about which the claimant complained (and for which complaining

the claimant suffered retaliation) are the intended beneficiaries of the federal funding.

This determination, however, does not end the Court's inquiry into the sufficiency of

Plaintiff's Title VI claim. Plaintiff's allegations regarding federal funding are bare and

conclusory and do not describe the federal funding the DOE received, let alone link that funding

to the students whose discrimination was the subject of Plaintiff's complaints. *See, e.g.*, FAC

¶ 12 [4] ("During all relevant times, the DOE was and is a recipient of federal funding for the

---

his Title VI claims. The precedential value of *Milione* is somewhat limited both because the court did not separately consider the plaintiff's Title VI retaliation claim from his Title VI discrimination claim and because the plaintiff apparently did not dispute either in the district court or on appeal that his Title VI claims were appropriately dismissed. *Id*. at 710; 567 F. App'x at 40.

purposes and under the guise of Title VI . . . ."), ¶ 28 [8] ("The New York public school system clearly fits into this [federal assistance] category . . . ."), ¶ 108 [42] ("The New York City DOE receives Federal Financial Assistance.").  Accordingly, Defendant's Title VI retaliation claim is dismissed without prejudice so that he may amend and replead this claim.[11]  The Amended Complaint must provide detail regarding the DOE's federal funding and must allege facts from which the Court can infer that the discrimination that he opposed was against individuals who were intended beneficiaries of that funding.[12]

### B. The Complaint Sufficiently Alleges NYCHRL Claims Against DOE, Mashel, and Schwartz

Defendants move to dismiss Plaintiff's NYCHRL claims, contending, as they argued with respect to the Title VI claim, that Plaintiff failed adequately to plead that he suffered adverse employment actions that would deter a reasonable employee from engaging in protected activity.  MTD at 8–11; MTD Reply at 2–4.

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."

---

[11]     After a party has amended his pleading as a matter of course, he may further amend only with the consent of the opposing party or with the court's leave, which the court should give freely when justice so requires.  Fed. R. Civ. P. 15(a).  A court has broad discretion when considering a request to amend, but it "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008), and citing *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000)).  Defendants contend that Plaintiff's claims should be dismissed with prejudice, as amendment would be futile and will prejudice them.  MTD at 23; MTD Reply at 8–9.  The Court is not unsympathetic to the Defendants' argument that Plaintiff has had multiple bites of the apple.  (Prior to this lawsuit, Plaintiff had filed a prior lawsuit which was also removed to federal court; that case was voluntarily dismissed by Plaintiff.  *See Verdi v. City of New York, et al.*, 16-CV-03782 PGG [Dkts. 1, 11, 47].)  Nevertheless, the Court does not believe that the permitted amendment of the Title VI claim will be futile or prejudicial and therefore will give Plaintiff one last opportunity to plead adequately a federal cause of action.

[12]     The Court notes that if Plaintiff cannot adequately allege a Title VI claim, the Court will lack subject matter jurisdiction and will dismiss the balance of the state law claims.

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citing

*Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011); *Williams v. New York City Hous. Auth.*,

872 N.Y.S.2d 27, 33–34 (1st Dept. 2009)). The retaliation provisions are broadly interpreted,

and "no challenged conduct may be deemed nonretaliatory unless a jury could not reasonably

conclude from the evidence that such conduct was reasonably likely to deter a person from

engaging in protected activity." *Id.* (quoting *Williams,* 872 N.Y.S.2d at 34 and citing *Albunio*, 16

N.Y.3d at 477–78) (internal quotation marks omitted). This determination should take into

account workplace realities, the claim's context, and that juries are "generally best suited to

evaluate the impact of retaliatory conduct." *Id.* (quoting *Williams,* 872 N.Y.S.2d at 34).

As discussed above, the Court interprets the FAC to allege three incidents of retaliation.

For the same reasons previously stated, the Court finds that Mashel's meeting and counseling

memorandum do not support claims under the NYCHRL, whereas a jury could reasonably

conclude that Mashel's threats and Schwartz's changes to Plaintiff's responsibilities and

resources were retaliatory under the NYCHRL.[13]

Additionally, because the FAC alleges no personal involvement by Fariña, Rose, and

Schwartz in Mashel's efforts to discipline and dismiss Plaintiff, this NYCHRL claim survives

only as to Defendants DOE and Mashel. Similarly, because the FAC does not allege the

personal involvement of any of the other individual Defendants in Schwartz's alterations of

Plaintiff's responsibilities and resources, that claim is dismissed as to the other three individual

Defendants. In sum, Defendants' motion to dismiss the NYCHRL claims is granted in part and

---

[13]    The Court's reasoning and determination in n.8 *supra* regarding allegations of the unchallenged elements of
the Title VI claim likewise apply to the Court's NYCHRL analysis; the Court finds that, at this stage, Plaintiff has
sufficiently alleged opposition to discrimination by his employer.

denied in part, with the Mashel allegations surviving against only Mashel and DOE, and the Schwartz allegations surviving only against Schwartz and DOE.

### C. Plaintiff's § 1983 Claim Fails Because, as a Public Employee, His Speech was Not Protected for the Purposes of this Claim

Defendants move to dismiss Plaintiff's § 1983 claim on the grounds that the speech underlying the claim was not protected because Plaintiff spoke as a public employee in his role as an Assistant Principal and not as a private citizen; that he failed to plead the necessary elements for municipal liability; and that Plaintiff failed to allege personal involvement by Fariña and Rose. MTD at 12–14; MTD Reply at 4–6.

To state a § 1983 claim for a First Amendment violation, a plaintiff "must show: (1) her speech was constitutionally protected, as a result of which (2) she suffered an adverse employment decision, and (3) a causal connection existed between the speech and the adverse employment decision, so that it can be said that her speech was the motivating factor in the determination." *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005) (internal quotation marks and citations omitted). "To determine whether a [public employee's] speech is constitutionally protected, a court must begin by asking whether the employee spoke as a citizen on a matter of public concern." *Massaro v. New York City Dep't of Educ.*, 481 F. App'x 653, 655 (2d Cir. 2012) (quoting *Sousa v. Roque,* 578 F.3d 164, 170 (2d Cir. 2009)) (internal quotation marks omitted). "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Sousa*, 578 F.3d at 170 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)) (internal quotation marks omitted). "Determining whether an employee spoke as an employee and not as a citizen is largely a

question of law for the court." *Massaro*, 481 F. App'x at 655 (quoting *Jackler v. Byrne,* 658

F.3d 225, 237 (2d Cir. 2011)).

      "Public employees speak as employees—and not as citizens—when they make

statements pursuant to their official duties." *Massaro*, 481 F. App'x at 655 (quoting *Garcetti,*

547 U.S. at 421) (internal quotation marks omitted). "The objective inquiry into whether a

public employee spoke pursuant to his or her official duties is a practical one." *Weintraub v. Bd.*

*of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010) (quoting

*Garcetti,* 547 U.S. at 424) (internal quotation marks omitted). "[S]peech can be 'pursuant to' a

public employee's official job duties even though it is not required by, or included in, the

employee's job description, or in response to a request by the employer." *Id*. at 203.

      Such official duty speech "owes its existence to a public employee's professional

responsibilities." *Weintraub*, 593 F.3d at 201 (citing *Garcetti*, 547 U.S. at 421) (internal

quotation marks omitted). Stated differently, a grievance is made pursuant to official duties

when it is "part-and-parcel of [an employee's] concerns about his ability to properly execute his

duties." *Id*. (citation omitted). "[C]ourts have routinely held as a matter of law that a teacher's

advocacy on behalf of her students falls squarely within her official duties as a teacher." *Ehrlich*

*v. Dep't of Educ. of City of New York*, No. 11 CIV. 4114 RMB KNF, 2012 WL 424991, at *3

(S.D.N.Y. Feb. 6, 2012) (collecting cases) (citations omitted). *See also Taylor v. New York City*

*Dep't of Educ.*, No. 11 CIV. 7833 AJN, 2012 WL 3890599, at *6 (S.D.N.Y. Sept. 6, 2012)

("[Where a teacher's] speech [is] purely advocacy for her students' educational needs or

otherwise necessary for the orderly performance of her duties, . . . [a] number of cases have held

that such speech by teachers is speech as an employee, rather than a citizen.") (collecting cases)

(citations omitted).

The facts alleged in the FAC demonstrate that Plaintiff's objections to the alleged discriminatory practices at P.S. 24 were lodged by him as part of his duties as a public employee to protect his students' and his putative students' rights.[14] The Court finds that Plaintiff's speech constituted advocacy on behalf of his students and putative students and was part-and-parcel of his duties as Assistant Principal at P.S. 24. Accordingly, his speech is not protected for the purposes of his § 1983 retaliation claim, and this claim is dismissed with prejudice as to all Defendants.[15]

### D. Plaintiff's Section 75-b Whistleblower Claim Survives but Only with Respect to Defendant DOE

Defendants move to dismiss Plaintiff's claim under New York State Civil Service Law § 75-b because the provision does not create individual liability; because Plaintiff failed to exhaust his administrative remedies; and because he did not plead that he suffered an adverse personnel action. MTD at 15–20; MTD Reply at 6–8.

Under Section 75-b, "[a] public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information . . . which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." N.Y. Civ. Serv. Law § 75-b(2)(a). A personnel action is defined as "an action affecting

---

[14]     *See, e.g.*, FAC ¶ 123 [45] ("[Defendants] retaliated against the Plaintiff for exercising his free speech rights with regard to matters of public concern and informing the DOE of the discriminatory and illegal practices that were being carried out at P.S. 24, including but not limited to the attempt to prevent minority students from attending P.S. 24 and the discriminatory kindergarten registration process . . . ."), ¶ 124 [45–46] ("[Defendants] violated the Plaintiff's First and Fourteenth Amendment rights in preventing him from speaking freely and performing his duties as Assistant Principal . . . ."), ¶ 171 [57–58] ("As a result of the retaliatory actions taken by Defendant Schwartz, the Plaintiff, Verdi, in his role as Assistant Principal of P.S. 24, became completely hindered in being able perform and execute his contractual duties, which included his own responsibilities to protect students against discrimination under Title VI, their contractual rights under the HIPPA, FERPA, the McKinney-Vento Law, and various other statutes, rules and regulations.").

[15]     Because Plaintiff's speech was not protected, the Court need not reach Defendants' other arguments as to municipal liability and the personal involvement *vel non* of Fariña and Rose.

compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance." *Id.* § 75-b(1)(d). When a public employee is not bound by a collective bargaining agreement that provides for final and binding arbitration for such a whistleblower retaliation claim, he may bring a claim in a court of competent jurisdiction. *Id.* § 75-b(3).

"In order to state a retaliation claim under Section 75-b, a plaintiff must allege (1) an adverse personnel action; (2) disclosure of information to a governmental body [regarding an improper governmental action], and (3) a causal connection between the disclosure and the adverse personnel action." *Krzesaj v. New York City Dep't of Educ.*, No. 16 CIV. 2926 (ER), 2017 WL 1031278, at *11 (S.D.N.Y. Mar. 15, 2017). "Improper governmental action" is conduct "which is in violation of any federal, state or local law, rule or regulation." N.Y. Civ. Serv. Law § 75-b(2)(a).

**1. Individuals Are Not Liable Under Section 75-b**

Section 75-b on its face does not reach the individual Defendants because a "public employer" is defined as "(i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission or public benefit corporation, or (vi) any other public corporation, agency, instrumentality or unit of government which exercises governmental power under the laws of the state." N.Y. Civ. Serv. Law § 75-b(1)(a). Thus, "claims under [Section] 75-b cannot be maintained against individual public employees." *Eyshinskiy v. New York City Dep't of Educ.*, No. 15 CIV. 10027 (DLC), 2016 WL 7017414, at *2 (S.D.N.Y. Dec. 1, 2016) (citation omitted), *aff'd sub nom. Eyshinskiy v. Kendall*, 692 Fed. App'x 677 (2d Cir. June 30, 2017).

Accordingly, Plaintiff's Section 75-b claims against the individual Defendants are dismissed with prejudice.

## 2. Plaintiff Was Not Required to Exhaust Administrative Remedies

"Where an employee is subject to a collective bargaining agreement requiring mandatory arbitration, the employee's Section 75-b(2)(a) claim must be asserted at the arbitration." *Krzesaj*, 2017 WL 1031278, at *11 (citation omitted). Defendants allege, and Plaintiff concedes, that Plaintiff is a member of the Council of Supervisors and Administrators of the City of New York, Local 1, American Federal of School Administrators, AFL-CIO (the "CSA"), which has a collective bargaining agreement with DOE. MTD at 16; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("MTD Opp.") [Dkt. 36] at 22.[16] Defendants point to Articles X and XI of Plaintiff's collective bargaining agreement in arguing that Plaintiff was required to exhaust his administrative remedies. MTD at 16; MTD Reply at 7–8; CSA Collective Bargaining Agreement ("CBA") [Dkt. 30-6] Arts. X, XI.[17]

Article X is a general grievance procedure that terminates in final and binding arbitration, but it limits an employee's grievances to a complaint that there has been "a violation, misinterpretation or inequitable application of any of the provisions of [the CBA]." CBA Art. X. §§ A(1)(a), C. Upon review of the CBA, the Court is unable to find provisions that precisely apply to the issues that Plaintiff would have grieved, namely Mashel's efforts to have him terminated, Mashel's meeting with Plaintiff and placement of a memorandum in his file, and

---

[16]    In his opposition brief, Plaintiff introduces new facts regarding, *inter alia*, his grievance and exhaustion of remedies. The Court will not consider those facts because they were not pled in his FAC. *See, e.g.*, *Zick v. Waterfront Comm'n of New York Harbor*, No. 11 CIV. 5093 CM, 2012 WL 4785703, at *3 (S.D.N.Y. Oct. 4, 2012) (citations omitted).

[17]    The Court properly takes judicial notice of the CBA. *See, e.g.*, *Granados v. Harvard Maint., Inc.*, No. 05-CV-5489 (NRB), 2006 WL 435731, at *3 n.3 (S.D.N.Y. Feb. 22, 2006) (taking judicial notice of a collective bargaining agreement) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

Schwartz's reassignment of Plaintiff's duties and removal of resources.[18]  Accordingly, Plaintiff was not required to exhaust his claims of retaliation pursuant to Article X.

Article XI, on which Defendants rely, might be a better fit for Plaintiff's grievances because it supplies a procedure for "special complaints" regarding harassment and intimidation that a principal and superintendent have failed to address.  CBA Art. XI § A.  This "special complaints" procedure does not, however, terminate with final and binding arbitration; instead, the arbitrator is required to make recommendations to the Board of Education.  *Id*. Art. XI §§ F, G.  Accordingly, Plaintiff is not required to exhaust this remedy because it does not include final and binding arbitration, a necessary element to the exhaustion requirement of Section 75-b.  In short, although the CBA subjects Plaintiff to certain administrative procedures, he is not required to have exhausted them in order to bring his Section 75-b claims.

### 3.  Plaintiff Sufficiently Alleges Adverse Personnel Action Under Section 75-b Only as to Schwartz's Alleged Retaliation

As noted above, pursuant to Section 75-b, adverse personnel actions must affect "compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance."  N.Y. Civ. Serv. Law § 75-b(1)(d).  As to Mashel's threats to discipline or fire Plaintiff, because nothing resulted from the threats that might have constituted one of the enumerated types of personnel actions—Plaintiff was neither disciplined nor fired, and is still employed at the school—the Court finds that, pursuant to a plain reading of the provision, Plaintiff has failed to allege adverse action connected to Mashel's threats.[19]  With regard to the

---

[18]     It is conceivable that Plaintiff might have grieved his treatment as a violation of Art. VII, § J, which generally lays out processes for discharges and reviews.  *See* CBA Art. VII, § J.  Defendants have not made such an argument, however, and instead have focused almost exclusively on the "special complaints" procedure in Article XI.  As discussed above, Article XI does not terminate in final and binding arbitration.  *See* MTD at 16; MTD Reply at 7–8; CBA Art. XI.  Any argument that Art. VII § J applies in this case has, therefore, been waived.

[19]     The Plaintiff did not cite and the Court was unable to find any cases in which threats, as in this matter, were sufficient to state a claim under Section 75-b.  The court in *Higgs v. Cty. of Essex*, 648 N.Y.S.2d 787, 787–89 (3d

meeting with Mashel and the counseling memorandum, the Court again finds that these

allegations do not sufficiently state that Plaintiff suffered from an adverse personnel action.

There were no repercussions from the meeting aside from the filing of a counseling

memorandum, and the counseling memorandum on its face did not affect compensation,

appointment, promotion, transfer, assignment, reassignment, or reinstatement. While the

memorandum itself arguably constitutes a review of Plaintiff's performance, there are

insufficient allegations that it adversely affected evaluation of his performance because it is

explicitly not disciplinary and explicitly cannot be used against Plaintiff except to prove that he

had been provided notice that he was required to stay away from the Moukas children.

Moreover, Plaintiff does not allege that the letter was ever referenced in any performance

evaluation thereafter, let alone ever used to his detriment.

The sufficiency of the allegations regarding Plaintiff's altered duties and resources is a

closer question. In *Fenton v. St. Lawrence County*, plaintiffs' allegations "that they were subject

to snide or annoying comments, loss of private office space, increased scrutiny by supervisors

and minor alterations of job responsibilities [were] insufficient" to support their Section 75-b

claim. 828 N.Y.S.2d 647, 650 (3d Dept. 2007). In contrast, the court in *Dobson v. Loos* found

that the plaintiff sufficiently alleged adverse personnel action by asserting that he was relegated

to "virtually nonexistent duties" while new, senior positions that should have been offered to him

were filled by others. 716 N.Y.S.2d 220, 221 (4th Dept. 2000). Reading the allegations of the

---

Dept. 1996), found that a "perceived or implied threat" was *not* actionable under the whistleblower provision where
a County employee who had raised issues about code violations in County buildings was advised by a member of
the County's Board of Supervisors that "it would be a good idea for [him] to take another position." Although
*Higgs* supports the position that threats alone do not constitute adverse personnel actions under Section 75-b, the
matter before this Court is arguably factually distinguishable because the threats to Plaintiff here are much more
direct and explicit than the implied threat in *Higgs*. Nonetheless, Plaintiff's allegations do not suffice under a plain
reading of the provision, as described above.

FAC in the light most favorable to Plaintiff, the Court finds that these allegations sufficiently state an adverse personnel action because the actions Schwartz took adversely affected Plaintiff's assignment at P.S. 24. And for the reasons stated in its analysis of the Title VI and NYCHRL claims, the Court also finds the action to be causally-connected to Plaintiff's complaints to the DOE Special Commissioner of Investigation.[20] Thus, the duty and resource allegations sufficiently state a Section 75-b claim.

### E. Plaintiff Abandoned His Negligence Claims

Defendants initially moved to dismiss Plaintiff's negligence claims because Plaintiff conceded that the employees at issue acted within the scope of their employment and because Plaintiff was not owed any special duty by his government employer. MTD at 20–21. Plaintiff did not respond to their arguments in his opposition; accordingly, Plaintiff abandoned his negligence claims, and they are dismissed with prejudice. *See, e.g.*, *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases finding claims abandoned when plaintiffs fail to address defendants' arguments) (citations omitted).

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's § 1983 and negligence claims are dismissed in their entirety with prejudice. Two of Plaintiff's NYCHRL claims survive: the allegations regarding Mashel's efforts to discipline and dismiss Plaintiff survive only as to Mashel and DOE, while the allegations regarding Schwartz's alterations to Plaintiff's duties and resources survive only as to Schwartz and DOE. The remaining NYCHRL claims are dismissed with prejudice. Plaintiff's Section 75-

---

[20] Defendants do not argue that Plaintiff has insufficiently alleged disclosure to a government body. As with its analysis of notice under the Title VI claim, the Court finds that disclosure has been sufficiently alleged to state a claim under Section 75-b.

b claim regarding Schwartz's conduct survives, but only as against Defendant DOE; the remaining Section 75-b claims are dismissed with prejudice. Plaintiff's Title VI claim is dismissed *without* prejudice; he may replead the claim, but only with respect to Mashel's and Schwartz's retaliation as described above, and naming only DOE as a Defendant. As a result, Defendants Fariña and Rose are dismissed from the action entirely.[21]

Plaintiff's Second Amended Complaint ("SAC") must be filed no later than February 8, 2018. The FAC's 65 pages contained excessive and duplicative allegations; Plaintiff should significantly prune and revise his allegations in drafting the SAC. The Court orders Plaintiff to organize the SAC chronologically and logically, to remove extraneous and redundant factual allegations, to number the paragraphs sequentially, and to state each of the four remaining claims in four separate, individually numbered counts (one for Title VI, two for NYCHRL, and one for § 75-b).

The parties are ordered to appear for a pretrial conference on February 16, 2018.

The Clerk of Court is instructed to terminate Docket Entry 28.

**SO ORDERED.**

Date: **January 22, 2018**
      **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[21] The Court is not granting leave to amend in order to cure the insufficiencies in the FAC relative to Fariña's and Rose's personal involvement in Mashel's and Schwartz's retaliation. Verdi has had multiple opportunities to allege such facts in this and his prior case. The Court finds that an additional opportunity to allege such facts would be futile. *See* MTD at 6–7, 23.